Hassan A. Zavareei (SBN 181547)
Kristen G. Simplicio (SBN 263291)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: 202-973-0900 (p)
Facsimile: 202-973-0950 (f)
hzavareei@tzlegal.com
ksimplicio@tzlegal.com

Todd A. Walburg (SBN 213063)
BAILEY & GLASSER LLP
475 14th Street, Suite 610
Oakland, California 94612
Telephone: (510) 207-8633
Facsimile: (510) 463-0241
twalburg@baileyglasser.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INEZ CLARA WASHINGTON, *on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>SELECT PORTFOLIO SERVICING, INC.,<br><br>Defendant. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**Action for Breach of Contract; Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.; Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 et seq, Fair Debt Collection Practices Act, 15 U.S.C. §1692f and §1692e ("FDCPA").** |

Plaintiff Inez Clara Washington, ("Ms. Washington" or "Plaintiff") on behalf of herself and all others similarly situated, alleges breach of contract, violations of the Rosenthal Fair Debt Collection Practices Act, and violations of the Unfair Competition Law against Defendant Select Portfolio Servicing, Inc. ("SPS"). In support of these claims, Plaintiff states as follows:

**NATURE OF THE ACTION**

1.     Defendant SPS is an industry leading servicer of residential mortgages, servicing residential mortgages nationwide and throughout the State of California.

2.     But SPS impermissibly profits from the homeowners it purports to service by charging and collecting illegal payment processing fees when borrowers make their monthly mortgage payments by telephone or online ("Pay-to-Pay Transactions").  SPS routinely violates state debt collection law and breaches the uniform terms of borrowers' mortgages ("Uniform Mortgages") by charging and collecting these illegal processing fees ("Pay-to-Pay Fees").

3.     SPS charges a Pay-to-Pay Fee of up to $15 each time a customer makes a payment online or over the phone.

4.     As a servicer, SPS is supposed to be compensated out of the interest paid on each borrower's monthly payment—not via additional "service" fees that do not reflect the cost to SPS of providing such services. Under California law, SPS cannot mark-up the amounts it pays third parties to provide borrowers' services and impose unauthorized charges not explicitly included in the deed of trust to create a profit center for itself. None of the Pay-to-Pay Fees are permitted by the deed of trust, and, therefore, SPS violates California law by charging those fees. And, by charging these unauthorized Pay-to-Pay Fees, SPS violates its contractual obligations to its borrowers.

5.     Despite its uniform contractual obligations to charge only fees explicitly allowed under the mortgage, applicable law, and only those amounts actually disbursed, SPS leverages its position of power over homeowners and demands exorbitant Pay-to-Pay Fees.  Upon investigation and belief, the actual cost for SPS to process online mortgage payment transactions is very low—well below the Pay-to-Pay Fees that SPS charges mortgagers.  SPS pockets the difference as pure profit.

6.      Plaintiff Inez Clara Washington paid these Pay-to-Pay Fees, and brings this class action lawsuit individually and on behalf of all similarly situated putative class members to recover the unlawfully charged Pay-to-Pay Fees and to enjoin SPS from continuing to charge these unlawful fees.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over SPS because SPS does business in California, and performed the wrongful acts giving rise to this lawsuit in California, as described in this Complaint.

8.      Venue is proper in this District because SPS does business in this District and the causes of action asserted herein arose in this District.

9.      Subject matter jurisdiction exists under the Class Action Fairness Act because diversity exists between the defendant and at least one class member and the amount in controversy exceeds $5,000,000.

## PARTIES

10.     Plaintiff Inez Clara Washington is a natural person residing in California who has a mortgage loan serviced by SPS. Ms. Washington makes loan payments over the phone, and each time she does so, SPS charges her a Pay-to-Pay Fee of $15.00. For example, on November 14, 2019, and December 13, 2019, SPS charged Plaintiff a $15.00 Pay-to-Pay Fee for making a payment over the phone.

11.     Defendant SPS is a Utah corporation with a principal place of business located in Utah.

## APPLICABLE LAW

**ROSENTHAL ACT**

12.     The Rosenthal Act is a remedial statute [that] should be interpreted broadly in order to effectuate its purpose.

13.     The Rosenthal Act defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code §1788.2(c).

14.     The Rosenthal Act defines a "consumer debt" as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." The term "consumer debt" includes mortgage debt. Cal. Civ. Code §1788.2(f).

15.     The Rosenthal Act defines "consumer credit transaction" as "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." Cal. Civ. Code §1788.2(e).

16.     The Rosenthal Act prohibits "Collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14(b).

17.     The Rosenthal Act also makes it illegal to represent that consumer debt "may be increased by the addition of . . . charges if, in fact, such fees and charges may not be legally added to the existing obligation." Cal. Civ. Code § 1788.13(e).

18.     The Rosenthal Act makes it illegal for any entity covered by it to violate the federal FDCPA. Cal. Civ. Code § 1788.17.

**THE CALIFORNIA UNFAIR COMPETITION LAW**

19.     The UCL defines unfair business competition to include any "unlawful, unfair, or fraudulent" act or practice. Cal. Bus. & Prof. Code § 17200.

20.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

21.     In addition, a business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

**THE FAIR DEBT COLLECTION PRACTICES ACT**

22.     The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

23.     The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt." *Id.* § 1692e.

24.     The FDCPA also prohibits debt collectors from "unfair or unconscionable means to collect or attempt to collect any debt," including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1).

25.     The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

26.     The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).

27.     The FDCPA defines "debt collector" as "any person who uses . . . any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debt owed . . . or asserted to be owed or due another." *Id.* § 1692a(6).

28.     The FDCPA contains an exclusion from the term "debt collector" for "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity:... (iii) concerns a debt which was *not in default at the time it was obtained* by such person." *Id* (emphasis added).

29.     The FDCPA defines communication as "conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692a(2).

30.     The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that] are primarily for personal, family, or household purposes." *Id.* § 1692a(5).

## FACTUAL ALLEGATIONS

### The Mortgage Servicing Industry

31.     Mortgage lenders rarely service their own loans. In many cases, lenders specialize in the origination of the loan, but they are not equipped to handle the day-to-day administrative tasks that come with a mortgage. Instead of managing these duties in-house, they assign the servicing rights of

their loans to a designated servicer—a company that specializes in the actual management and administration of mortgages.

32.     A mortgage servicer is a company that, in turn, handles the day-to-day administrative tasks of a mortgage loan, including receiving payments, sending monthly statements and managing escrow accounts.

33.     There are two main, assignable rights under a Deed of Trust and Note.  There are ownership rights as the lender under the agreement.  Separately, there are mortgage servicing rights that entitle the Lender to enforce the Deed of Trust, collect mortgage loan payments, and charge fees allowed by the Note and Deed of Trust.

34.     SPS is a loan servicer that operates around the country. SPS buys mortgage servicing rights and exercises those mortgage servicing rights to collect mortgage payments, charge fees, enforce the Deed of Trust and Note, as well as initiate foreclosure on properties that secure the Deed of Trust and Note.  SPS exercises these rights where there is a valid assignment that is granted to SPS in an asset purchase agreement.  SPS is a privately-held company and does not disclose the terms of its asset purchase and assignment agreements publicly.

35.     Each time a mortgage borrower whose loan is serviced by SPS makes a payment over the online or over the phone ("Pay-to-Pay Transaction"), SPS charges the borrower a Pay-to-Pay Fee of up to $15.00.

36.     Typically, a loan servicer will use a vendor to process transaction. But, SPS does not use any vendor or third party to process the transaction. Third-party vendors, Western Union and ACI Worldwide charge other loan servicers $.50 or less per internet or phone transaction. The actual cost to SPS to process the Pay-to-Pay Transactions is a fraction of the amount SPS charged to borrowers, and SPS pockets almost the entire amount as impermissible profit.

37.     The Uniform Mortgages of SPS's customers do not authorize SPS to charge Pay-to-Pay Fees. In fact, the Pay-to-Pay Fees violate borrowers' mortgages.

*Named Plaintiff's Facts*

38.     On or January 23, 2008, Steven Lewis Washington and Inez Clara Washington, a married couple, purchased a home in Adelanto, California, through a loan from Bank of America, N.A., secured by a mortgage on the property (the "Deed of Trust"). The Deed of Trust is attached as **Exhibit A.** The Washingtons took out the mortgage loan secured by the property for personal, family, or household uses.

39.     Uniform Fannie Mae/Freddie Mac multistate notes, which are widely used in California, define "Default" as the failure to make a mortgage payment on the due date: "If I do not pay the full amount of e ach monthly payment on the date it is due, I will be in default." **Exhibit B**. The form note also includes a 15-day grace period. On information and belief, which will be confirmed during discovery, Plaintiff's mortgage is secured by a Note containing materially identical provisions.

40.     Fannie Mae and Freddie Mac assign servicing rights with restrictions on the fees that a loan servicer may charge.  On information and belief, Fannie Mae or Freddie Mac assigned Ms. Washington's loan to SPS.  Every loan servicing assignment from Fannie Mae or Freddie Mac is made under the restrictions of Fannie Mae Guidelines for Single Family Loans (the "Guidelines").  The Guidelines prohibit Pay-to-Pay Fees as an illegal fee for "facilitating routine borrower collections" and even if the Guidelines allowed a fee, SPS must keep written policies that explain how the amount of the fee related to the actual cost of providing the service.  Considering the low cost of the service, SPS's Pay-to-Pay Fee amounts are unrelated to the actual cost of providing the service to borrowers.

41.     By letter dated November 5, 2019, Ms. Washington received notice that SPS was assigned the servicing rights to the loan. As servicer, SPS has the right to collect payments and perform services for the borrower on behalf of the lender. The Deed of Trust provides that the "Loan Servicer" possesses a "partial interest in" the Note, which may be transferred. *See* Ex. A ¶ 20. The Deed of Trust further provides that "[t]he covenants and agreements of this Security Instrument shall bind (except as provided in section 20) and benefit the successors and assigns of Lender." Ex. A ¶ 13.[1]

---

[1] Section (or Paragraph) 20 provides: "The note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might

42.     SPS became bound as an assignee to the Deed of Trust at the time it acquired the servicing rights. In order for SPS to exercise rights under the Deed of Trust to collect Ms. Washington's mortgage payments, there must be an assignment of mortgage servicing rights.

43.     SPS set up and on-boarded the Ms. Washington's loan on November 8, 2019 as a "New Loan Set-Up."  At that time, Ms. Washington's loan was at least 38 days delinquent.

44.     On the same day, November 8, 2019, SPS charged Ms. Washington a late fee of $20.66.

45.     Under the terms of the Deed of Trust, collection costs may only be charged in connection with a default. Ex. A, ¶ 14.

46.     When SPS acquired the serving rights right to collect payments and perform services for the borrower on behalf of the lender, Ms. Washington's loan was in default as evidenced by the SPS statement dated November 15, 2019 (the "November Statement") which stated that "as of November 15, you are 45 days delinquent on your mortgage loan."  Ms. Washington's November and December statements are enclosed as **Exhibit C**.

47.     On November 14, 2019, Ms. Washington made a loan payment over the phone in the amount of $206.67 and was charged a Pay to Pay Fee in the amount of $15.00. According to SPS, this payment satisfied the payment due September 1, 2019.

48.     On December 13, 2019, Ms. Washington made a loan payment over the phone in the amount of $206.67 and was charged a Pay to Pay Fee in the amount of $15.00.  According to SPS, this payment satisfied the payment due October 1, 2019.

49.     In accordance with the statement from SPS dated April 14, 2020 (the "April Statement"), the Ms. Washington made loan payments on January 13, 2020 (which satisfied the

result in a change in the entity (known as the "Loan Servicer") that collects periodic payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There might also be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change under the Loan Servicer, Borrower will be given written notice of the change . . . . If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser." Ex. A ¶ 20.

payment due November 1, 2019), February 15, 2020 (which satisfied the payment due December 1, 2019),  and March 11, 2020 (which satisfied the payment due January 1, 2020) and were charged Pay to Pay Fees each time they made these payments. The April Statement is attached as **Exhibit D**.

50.    The April Statement advised Ms. Washington that "as of April 14, 2020, you are 73 days delinquent on your mortgage loan. *See* Ex. D.

51.    Plaintiff's mortgage payments are due on the 1st of the month each and every month, and a late charge will be assessed if payments are not received during the 15-day grace period. Each of Ms. Washington's payments on November 14, 2019, December 13, 2019, January 13, 2020, February 15, 2020, and March 11, 2020, were made on past-due amounts and after the grace period, and while the mortgage was due and owing.

52.    SPS collects the Pay-to-Pay Fees even though it knows that such fees are not authorized under the Deed of Trust and that it therefore has no right to collect them.

53.    Like other borrowers whose mortgages are serviced by SPS, Plaintiff's Deed of Trust incorporates standard language from Fannie Mae model mortgages.  And like other Fannie Mae mortgages, the Deed of Trust states that the servicer "may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law." Ex. A ¶ 14.

54.    "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Ex. A at 2, ¶ (J).

55.    The Deed of Trust further states that it is "governed by federal law and the law of the jurisdiction in which the Property is located," *i.e.*, California. Ex. A ¶ 16.

56.    Charging Pay-to-Pay Fees not authorized by the Deed of Trust violated the Rosenthal Act, *i.e.*, California law. *See* Cal. Civ. Code §§ 1788.13(e), 1788.14(b), 1788.17.

57.    Charging Pay-to-Pay Fees not authorized by the Deed of Trust also violated the federal FDCPA.

58.    By collecting Pay-to-Pay Fees in violation of "Applicable Law," *i.e.*, the Rosenthal Act and the federal FDCPA, SPS breached the uniform covenants of the Deed of Trust.

59.     Even if SPS was somehow permitted to collect a fee under the auspice that it is a default related fee, under Paragraph 9 of the Deed of Trust, SPS's demand for payment of Pay-to-Pay Fees was and is a direct breach of that paragraph, too.

60.     Paragraph 9 of the Deed of Trust states that only "amounts *disbursed* by Lender under this Section 9 shall become an additional debt of Borrower secured by this Security Instrument." *See* Ex. A ¶ 9 (emphasis added).

61.     SPS collected more than the amount they disbursed to process the Pay-to-Pay Transactions.

62.     SPSs' collection of Pay-to-Pay Fees violated both the Rosenthal Act and the FDCPA.

63.     The above paragraphs are contained in the Uniform Covenants section of the Deed of Trust. SPS thus breached its contracts on a class-wide basis.

64.     Prior to filing this Complaint, Ms. Washington made a written pre-suit demand upon SPS.

65.     SPS was given a reasonable opportunity to cure the breaches complained of herein but has failed to do so.

## CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this action on behalf of the following classes of persons, subject to modification after discovery and case development:

**The California Class:**
All persons (1) with a residential mortgage loan securing a property in California, (2) serviced or subserviced by SPS, (3) and who paid a fee to SPS for making a loan payment by telephone, IVR, at an ATM, or the internet, during the applicable statutes of limitations through the date a class is certified.

**The Nationwide Class:**
All persons (1) with a residential mortgage securing property, (2) serviced or subserviced by SPS, (3) which were in default on their loan payment obligations at the time SPS acquired servicing rights, (4) and who paid a fee to SPS for making a loan payment by telephone, IVR, or the internet, during the applicable statutes of limitations for Plaintiff's FDCPA claim through the date a class is certified.

67.     Class members are identifiable through Defendant's records and payment databases.

68.     Excluded from the class are the Defendant; any entities in which it has a controlling interest; its agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

69.     Plaintiff proposes that she serve as class representatives.

70.     Plaintiff and the Class have all been harmed by the actions of Defendant.

71.     Numerosity is satisfied. There are thousands of class members.  Individual joinder of these persons is impracticable.

72.     There are questions of law and fact common to Plaintiff and to the Class, including, but not limited to:

a.     Whether SPS assessed Pay-to-Pay Fees on Class members;

b.     Whether SPS breached its contracts with borrowers by charging Pay-to-Pay Fees not authorized by their Deed of Trusts;

c.     Whether SPS violated the Rosenthal Act by charging Pay-to-Pay Fees not due;

d.     Whether SPS violated the FDCPA by charging Pay-to-Pay Fees not due;

e.     Whether SPS violated the UCL;

f.     Whether SPS's business practices are unfair;

g.     Whether SPS's business practices are unlawful;

h.     Whether SPS's cost to process Pay-to-Pay Transactions is less than the amount that it charged for Pay-to-Pay Fees;

i.     Whether Plaintiff and the Class were damaged by SPS's conduct;

j.     Whether Plaintiff and the Class are entitled to actual and/or statutory damages as a result of SPS's actions;

k.     Whether Plaintiff and the Class are entitled to restitution;

l.     Whether Plaintiff and the Class are entitled to attorney's fees and costs.

73.     Plaintiff's claims are typical of the claims of the Class members. SPS charged her Pay-to-Pay Fees in the same manner as the rest of the Class members. Plaintiff and the Class members entered into uniform covenants in their Deed of Trusts that prohibit Pay-to-Pay charges or, at most, cap

the amount of Pay-to-Pay Fees allowed to be charged at the actual amount disbursed by SPS to process Pay-to-Pay Transactions.

74.     Plaintiff is an adequate class representative because her interests do not conflict with the interests of the class members and she will adequately and fairly protect the interests of the class members. Plaintiff has taken actions before filing this amended complaint, by hiring skilled and experienced counsel, and by making a pre-suit demand on behalf of class members to protect the interests of the class.

75.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

76.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

**COUNT I**
**Violation of the Rosenthal Fair Debt Collection Practices Act**
**Cal. Civ. Code §§ 1788 *et seq.* (Rosenthal Act)**
**On behalf of Plaintiff and the California Class**

77.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

78.     The Rosenthal Act applies to SPS because it regularly engages in debt collection as defined by the statute. Cal. Civ. Code § 1788.2.

79.     SPS knew that the Pay-to-Pay Fees were not expressly set out in the Deed of Trust or the Deed of Trusts of the other Class Members, yet it collected them anyway.

80.     The Rosenthal Act makes it illegal to represent that consumer debt "may be increased by the addition of . . . charges if, in fact, such fees and charges may not be legally added to the existing obligation." Cal. Civ. Code § 1788.13(e).

81.     By assessing Pay-to-Pay Fees, SPS represented that the mortgage loan debts of Plaintiff and the Class Members may be increased by the addition of the Pay-to-Pay Fees, even though Pay-to-Pay Fees may not be legally added to the existing obligation.

82.     This conduct violated the Rosenthal Act.

83.     The Rosenthal Act also prohibits "collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14.

84.     When SPS collected Pay-to-Pay Fees from Plaintiff and the Class Members, it collected (or attempted to collect) fees or charges for services rendered that were not permitted by law. This conduct violated the Rosenthal Act.

85.     By charging Pay-to-Pay Fees, a portion of which it retains, SPS acted in violation of the federal Fair Debt Collection Practices Act, which prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

86.     The Deed of Trusts of Plaintiff and the Class Members do not expressly authorize SPS to collect Pay-to-Pay Fees. At most, the Uniform Mortgages permit SPS to collect the actual amount disbursed to process the Pay-to-Pay Transactions.

87.     Although the Deed of Trusts of Plaintiff and the Class Members do not expressly authorize collection of Pay-to-Pay Fees, SPS collected such fees anyway.

88.     In so doing, SPS violated 15 U.S.C. § 1692f.

89.     The Rosenthal Act makes it illegal for any entity covered by the Rosenthal Act to violate the federal FDCPA. Cal. Civ. Code § 1788.17. By violating the federal FDCPA, SPS violated the Rosenthal Act

90.     Plaintiff and the Class Members were harmed when SPS violated the Rosenthal Act through the above-described conduct.

91.     As a result of each and every violation of the Rosenthal Act, Plaintiff and the Class Members are entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation, pursuant to Cal. Civ. Code §§ 1788.30(b), 1788.17, and 1788.32, to the full extent provided by law; and reasonable attorneys' fees and costs under Cal. Civ. Code § 1788.30(c).

**COUNT II**
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200,** *et seq.*
**On behalf of Plaintiff and the California Class**

92.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

93.     The California Unfair Competition Law "UCL" defines unfair business competition to include any "unlawful, unfair, or fraudulent" act or practice. Cal. Bus. & Prof. Code § 17200.

**Unlawful Prong**

94.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

95.     SPS's conduct violates the Rosenthal Act and the FDCPA. These violations are sufficient to support Plaintiff's and the California Class's claim under the unlawful prong of the UCL.

96.     The Rosenthal Act applies to SPS because it regularly engages in debt collection as defined by the statute. Cal. Civ. Code § 1788.2.

97.     SPS knew that the Pay-to-Pay Fees were not expressly set out in the Deed of Trust or the Deed of Trusts of the other California Class Members, yet it collected them anyway.

98.     The Rosenthal Act makes it illegal to represent that consumer debt "may be increased by the addition of . . . charges if, in fact, such fees and charges may not be legally added to the existing obligation." Cal. Civ. Code § 1788.13(e).

99.     By assessing Pay-to-Pay Fees, SPS represented that the mortgage loan debts of Plaintiff and the California Class Members may be increased by the addition of the Pay-to-Pay Fees, even though Pay-to-Pay Fees may not be legally added to the existing obligation.

100.    This conduct violated the Rosenthal Act.

101.    The Rosenthal Act also prohibits "collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14.

102.    When SPS collected Pay-to-Pay Fees from Plaintiff and the California Class Members, it collected (or attempted to collect) fees or charges for services rendered that were not permitted by law. This conduct violated the Rosenthal Act.

103.    By charging Pay-to-Pay Fees, a portion of which it retains, SPS acted in violation of the federal Fair Debt Collection Practices Act, which prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

104.    The Deed of Trusts of Plaintiff and the California Class Members do not expressly authorize SPS to collect Pay-to-Pay Fees. At most, the Uniform Mortgages permit SPS to collect the actual amount disbursed to process the Pay-to-Pay Transactions.

105.    Although the Deed of Trusts of Plaintiff and the California Class Members do not expressly authorize collection of Pay-to-Pay Fees, SPS collected such fees anyway.

106.    In so doing, SPS violated 15 U.S.C. § 1692f.

107.    The Rosenthal Act makes it illegal for any entity covered by the Rosenthal Act to violate the federal FDCPA. Cal. Civ. Code § 1788.17. By violating the federal FDCPA, SPS violated the Rosenthal Act

108.    As a result of the above conduct, Plaintiff and the California Class have suffered economic injury, and SPS has been unjustly enriched at their expense. SPS has been unjustly enriched by obtaining revenues and profits that it would not have obtained otherwise absent its unlawful conduct.

109.    Through its unlawful acts and practices, SPS has improperly obtained money from Plaintiff and the members of the California Class. As such, Plaintiff requests that the Court cause SPS to restore the money to Plaintiff and the California Class and enjoin SPS from continuing to violate the Rosenthal Act, FDCPA, and UCL. Plaintiff's mortgage continues to be serviced by SPS, and she intends to make mortgage payments over the phone and online in the future. Absent an injunction, Plaintiff and the California Class Members may be irreparably harmed and/or denied an effective and complete remedy.

**Unfair Prong**

110.    In addition, a business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

111.    SPS's actions constitute "unfair" business practices because, as alleged above, SPS engaged in the immoral, unethical, oppressive, and unscrupulous practice of charging Pay-to-Pay Fees

not authorized by the Uniform Mortgages or applicable law. SPS's unfair practice was substantially injurious to consumers, who were forced to pay $5 each time they wished to make payments by phone. Because SPS charged fees well above the actual cost of providing phone payment services, there are no countervailing benefits to consumers or competition that outweigh the injuries suffered by Plaintiff and the California Class.

112.    As a result of the above conduct, Plaintiff has suffered economic injury, and SPS has been unjustly enriched at the expense of Plaintiff and members of the California Class. SPS has been unjustly enriched by obtaining revenues and profits that it would not have obtained otherwise absent its unlawful conduct.

113.    Through its unlawful acts and practices, SPS has improperly obtained money from Plaintiff and the California Class Members. As such, Plaintiff requests that the Court cause SPS to restore the money to Plaintiff and the California Class and enjoin SPS from continuing to violate the UCL in the future. Plaintiff's mortgage continues to be serviced by SPS, and she intends to make mortgage payments over the phone or online in the future. Absent an injunction, Plaintiff and the California Class Members may be irreparably harmed and/or denied an effective and complete remedy.

**COUNT III**
**Violation of The**
**Fair Debt Collection Practices Act §§ 1692e, 1692f**
**On behalf of Plaintiff and the Nationwide Class**

114.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

115.    Plaintiff and the Nationwide Class members are "consumers" as defined by 15 U.S.C. § 1692a(3) because Plaintiff and the Nationwide Class members purchased homes by mortgage primarily for personal, family, or household use.

116.    SPS is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because as a servicer it regularly attempts to collect, and collects, amounts owed or asserted to be owed or due another. Also,

SPS began servicing Plaintiff's mortgage while it was in default, according to the terms of Plaintiff's note and mortgage, so none of the exceptions under 15 U.S.C. § 1692a applies.

117.   SPS is a "debt collector" as defined by 15 U.S.C. § 1692a(6) on Plaintiff's loan because every month it collected Plaintiff's loan payments on behalf of the Plaintiff's lender.

118.   SPS does not enjoy any "safe harbor" protection for loan servicers because it acquired the rights to service Plaintiff's loan at a time when plaintiff was at least 38 days delinquent and was in default according to the terms of the Note. SPS acquired the loans of the Nationwide Class members while they were in default.

119.   Moreover, SPS on-boarded the loan and on the same day charged Plaintiff a late fee of $20.66.  Under the terms of the Note a late fee may only be charged when Plaintiff is in default.

120.   SPS violated 15 U.S.C. § 1692f when it collected Pay-to-Pay Fees not owed and not expressly authorized by the agreement creating the debt and in excess of the amount disbursed, from Plaintiff and the Nationwide Class members, inuring a benefit to SPS.

121.   SPS violated 15 U.S.C. § 1692e(2)(A) when it misrepresented the amount, character, and status of the Plaintiff's and the Nationwide Class members' mortgage debt.

122.   As a result of SPS's violation of 15 U.S.C. §§ 1692e–f, Plaintiff and the Nationwide Class members were harmed monetarily and are entitled to actual damages, plus statutory damages under 15 U.S.C. § 1692k, together with reasonable attorney's fees and costs.

**COUNT IV**
**Breach of Contract**
**On Behalf of Plaintiff and the California Class**

123.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

124.   Plaintiff and the California Class Members entered into contracts with SPS. SPS breached its contracts with Plaintiff and the California Class Members when it charged Pay-to-Pay Fees

not agreed to in their Deed of Trusts, specifically prohibited by their Deed of Trusts, and in excess of the amounts actually disbursed by SPS to pay for the cost of Pay-to-Pay Transactions.

125.   Plaintiff purchased a home subject to the Deed of Trust. *See* Ex. A.

126.   At some point, SPS was assigned the servicing rights to the loan. As servicer, SPS has the right to collect payments and perform services for the borrower on behalf of the lender. The Deed of Trust provides that the loan servicer possesses a "partial interest in" the Note, which may be transferred. *See* Ex. A ¶ 20. The Deed of Trust further provides that "[t]he covenants and agreements of this Security Instrument shall bind (except as provided in section 20) and benefit the successors and assigns of Lender." Ex. A ¶ 13. SPS thus became bound as an assignee to the Deed of Trust at the time it acquired the servicing rights to the subject mortgage loan.

127.   Each time Plaintiff make mortgage payments over the phone or online, SPS charges her a Pay-to-Pay Fee. On November 14, 2019, December 13, 2019, January 13, 2020, February 15, 2020 and March 11, 2020, SPS charged Plaintiff a $15.00 Pay-to-Pay Fee for making a payment online or over the phone.

128.   Fannie Mae, in assigning the loan to SPS, restricts the fees that SPS may collect under the assignment through the Guidelines.  The Guidelines prohibit any fee for "facilitating routine borrower collections."  Even if any fee may be charged, SPS may only collect a fee for "special services" and the Guidelines require SPS to keep written policies concerning how the amount of the fee relates to the actual cost of providing the service.  Here, SPS's Pay-to-Pay Fees do not relate to the actual cost of SPS providing the Pay-to-Pay service.

129.   These fees were not authorized by the Deed of Trust.

130.   Like other borrowers whose mortgages are serviced by SPS, Plaintiff's Deed of Trust incorporates standard language from Fannie Mae model mortgages.  And like other Fannie Mae mortgages, the Deed of Trust states that the servicer "may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law." Ex. A ¶ 14.

131.   The Deed of Trust states that "[t]his Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located," i.e., California. Ex. A ¶ 16. It further

states that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." *Id*. ¶ 14.

132.    "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Ex. A at 2 ¶ (J).

133.    Charging Pay-to-Pay Fees not authorized by the Deed of Trust violated the Rosenthal Act, i.e., California law. *See* Cal. Civ. Code §§ 1788.13(e), 1788.14(b), 1788.17. It also violated the federal FDCPA.

134.    By collecting Pay-to-Pay Fees in violation of "Applicable Law," i.e., the Rosenthal Act and the federal FDCPA, SPS breached the uniform covenants of the Deed of Trust.

135.    Even if the Pay-to-Pay Fees could somehow be construed as a default-related fee under ¶ 9, "Protection of Lender's Interest in the Property and Rights Under This Security Instrument" section, that section permits only "amounts *disbursed* by lender" to become the debt of the borrower. *See* Ex. A ¶ 9 (emphasis added). By assessing more than the amounts it actually disbursed to the balance of Plaintiff's mortgage, SPS violated Paragraph 9 of the Deed of Trust.

136.    Because the above provisions are contained in the "Uniform Covenants" section of the Deed of Trust, SPS has breached their contracts on a class-wide basis.

137.    Plaintiff and the members of the Class were damaged by SPS's breach.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of herself and others similarly situated, respectfully request that the Court:

138.    Certify the proposed Classes;

139.    Award damages, including compensatory damages, to Plaintiff and the Class in an amount to be determined at trial;

140.    Award statutory damages and/or penalties to Plaintiff and the Class;

141.    Permanently enjoin SPS from the wrongful and unlawful conduct alleged herein;

142.    Award Plaintiff and the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

143.    Award pre- and post-judgment interest to the extent provided by law; and

144.    Award such further relief as the Court deems appropriate.

## PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Dated: August 24, 2020                              Respectfully Submitted,

Hassan A. Zavareei (SBN 181547)
Kristen G. Simplicio (SBN 263291)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: 202-973-0900 (p)
Facsimile: 202-973-0950 (f)
hzavareei@tzlegal.com
ksimplicio@tzlegal.com

Todd A. Walburg (SBN 213063)
BAILEY & GLASSER LLP
475 14th Street, Suite 610
Oakland, California 94612
Telephone: (510) 207-8633
Facsimile: (510) 463-0241
twalburg@baileyglasser.com

*Counsel for Plaintiff and the Proposed Class*